## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRACY AINSWORTH,** *as parent and natural Tutrix on behalf of the minor child Veronika Bumgarner, Individually and as Personal Representative of the Estate of Vernon Bumgarner, Deceased* | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-0688** |
| **CAILLOU ISLAND TOWING COMPANY, INC., et al.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court is Caillou Island Towing Company, Inc.'s, Monteiro Fleet, Inc.'s, and Monteiro Marine Services, Inc.'s (collectively, "Defendants") "Motion for Partial Summary Judgment to Dismiss Plaintiff's Claims for Punitive Damages."[1] After considering the pending motion, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will deny the pending motion.

## I. Background

### A. Factual Background

Tracy Aisnworth ("Plaintiff") is the parent and natural tutrix of VB, and the personal representative of the estate of Vernon Bumgarner ("Decedent").[2] VB is the surviving daughter of Decedent.[3] Plaintiff claims that at all relevant times, Defendants owned, operated, and/or crewed the

---

[1] Rec. Doc. 35.

[2] Rec. Doc. 40 at ¶ 1.

[3] *Id.* at ¶ 2.

*Augusta*, a vessel involved in the incident that is the basis of this suit.[4]  Decedent was employed by Defendants as a member of the crew of the *Augusta*.[5]

On or about January 16, 2013, Decedent and other members of the crew were attempting to change the lights on a barge being towed by the *Augusta*.[6] After Decedent transferred from the *Augusta* to the barge, the captain of the *Augusta* allegedly failed to maintain the vessel's position, eventually causing the towline to jerk the barge.[7] The jerking of the barge "caus[ed] Decedent to fall from the barge into the Mississippi River."[8] Decedent subsequently drowned, not to be found until March 12, 2013.[9]

**B. Procedural Background**

On April 10, 2013, Plaintiff filed a complaint alleging that (1) Decedent's injuries and death were caused by the negligence of Defendants, pursuant to the Jones Act,[10] and (2) Decedent's injuries and death were caused by the Defendants' breach of their duty to furnish a seaworthy vessel,

---

[4]  *Id.* at ¶ 9.

[5]  *Id.* at ¶ 10.

[6]  *Id.* at ¶ 11.

[7]  *Id.*

[8]  *Id.*

[9]  *Id.*

[10]  Rec. Doc. 2 at ¶ 13.

pursuant to general maritime law.[11] Plaintiff sought loss-of-society damages and lost-future-income damages.[12] Her prayer for relief also included a request for punitive damages.[13]

On May 21, 2013, Defendants filed a Rule 12(c) Motion for Partial Judgment on the Pleadings, asserting that Plaintiff was not entitled to loss-of-society damages, lost-future-income damages, or punitive damages.[14] On June 24, 2013, the Court granted Defendants' Rule 12(c) Motion.[15] In its Order and Reasons, the Court explained that although neither the Supreme Court nor the Fifth Circuit had directly addressed the issue, other district courts within this Circuit had interpreted *Miles v. Apex Marine Corp.*[16] and *Atlantic Sounding Co., Inc. v. Townsend*[17] as precluding punitive damages. Thus, the Court found: "A Jones Act seaman is not entitled to punitive damages. Therefore, the Jones Act seaman's survivors may not receive punitive damages once they inherit the seaman's survival action for the injuries the decedent suffered, whether they sue under the Jones Act or general maritime law."[18] The Court also ruled that Plaintiff could not recover loss-

---

[11]  Rec. Doc. 2 at ¶ 14.

[12]  *Id.* at ¶ 15.

[13]  *Id.* at ¶ 17.

[14]   Rec. Doc. 9 at p. 1

[15]   Rec. Doc. 17.

[16]  *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).

[17]  *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009).

[18]  *Id.* at p. 12.

of-society damages,[19] or lost-future-income damages.[20] Following the Court's Order, Plaintiff filed an amended complaint, removing the request for punitive damages, on July 23, 2013.[21]

On October 4, 2013, Plaintiff filed an "Unopposed Motion for Reconsideration of Defendants' Rule 12(c) Motion for Partial Judgment on the Pleadings,"[22] wherein she moved the Court to reconsider and vacate its Order dismissing Plaintiff's claim for punitive damages. In support of her motion, Plaintiff cited the Fifth Circuit's decision *McBride v. Estis Well Service, L.L.C*,[23] entered October 2, 2013. In *McBride*, the Fifth Circuit revisited its jurisprudence surrounding punitive damage awards under general maritime law, and held that "punitive damages remain available to seamen as a remedy for the general maritime law claim of unseaworthiness."[24] Because of this intervening change in the controlling law, on October 21, 2013, the Court granted Plaintiff's motion for reconsideration, and gave Plaintiff leave to file an amended complaint.[25]  On October 21, 2013, Plaintiff's second amended complaint was entered, reasserting Plaintiff's claim for punitive damages.[26]

---

[19]   *Id.* at p. 10.

[20]   *Id.* at p. 11.

[21]   Rec. Doc. 23.

[22]   Rec. Doc. 33.

[23]   731 F.3d 505.

[24]   *Id.* at 518.

[25]   Rec. Doc. 38.

[26]   Rec. Doc. 39.

On October 8, 2013, Defendants filed the pending "Motion for Partial Summary Judgment to Dismiss Plaintiff's Claims for Punitive Damages."[27] Plaintiff filed a memorandum in opposition on October 29, 2013.[28] With leave of the court, Defendants filed a reply on November 4, 2013,[29] and Plaintiffs filed a sur-reply on November 5, 2013.[30]

## II. Parties' Arguments

### A. Defendants' Argument in Support

Defendants assert that they are entitled to summary judgment because "[t]here is no genuine issue of material fact regarding Plaintiff's inability to recover punitive damages in this case."[31] First, Defendants contend that "the facts produced through discovery demonstrate that Plaintiff's claims sound in Jones Act negligence, not in general maritime unseaworthiness, and therefore punitive damages are not available."[32] Second, Defendants aver that "even if the facts do support a cognizable claim under general maritime law unseaworthiness, there is no genuine dispute that Defendants' alleged breach of that duty was not willful and wanton, as is required for a finding of punitive damages."[33] Finally, Defendants maintain that even if there is a genuine issue of fact regarding the crew's alleged willful and wanton breach of the duty to provide a seaworthy vessel, Caillou Island, as [sic.] was not complicit and therefore cannot be held vicariously liable for the wilfull or wanton

---

[27] Rec. Doc. 35.

[28] Rec. Doc. 41.

[29] Rec. Doc. 47.

[30] Rec. Doc. 56.

[31] Rec. Doc. 35-2 at p. 1.

[32] *Id.*

[33] *Id.* at pp. 1–2.

behavior of its crew."[34] According to Defendants, "[u]nder longstanding Fifth Circuit precedent, a defendant is not vicariously liable for the conduct of its employees that may merit punitive damages."[35]

### B. Plaintiff's Argument in Opposition

In opposition to Defendants' motion, Plaintiff asserts that "the *Augusta* was not seaworthy because it employed improper lighting of the barge and pontoons it was towing, employed an ill-trained incompetent crew, and used an improper method of work in an attempt to rectify the unseaworthy condition."[36] Furthermore, Plaintiff contends that there is a genuine issue of material fact as to "whether Defendants' failure to provide a seaworthy vessel was willful and wanton, reflecting a reckless disregard for the safety of the crew of the M/V *Augusta*."[37] Turning to whether Defendants were complicit, Plaintiff maintains that "Caillou ratified the conduct of Hunter," the captain of the *Augusta*, as Caillou employees responsible for compliance with federal rules and regulations testified that they were "comfortable with the actions taken by Hunter."[38] Moreover, Plaintiff avers that "Caillou did nothing to ensure that Hunter was trained and was knowledgeable of the federal regulations, deck operations, policies and procedures, including regulations pertaining to the lighting of the flotilla."[39]

---

[34] *Id.* at p. 2.

[35] *Id.*

[36] Rec. Doc. 41 at p. 4.

[37] *Id.*

[38] *Id.* at p. 22.

[39] *Id.*

6

### III. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[41] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[42] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[43]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[44] If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[45] The nonmoving party can then defeat the motion for summary judgment by either countering with sufficient evidence of its own or "showing that the moving party's evidence is so sheer that it may

---

[40] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[41] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[42] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[43] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[44] *Celotex*, 477 U.S. at 323.

[45] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[46] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[47]

## IV. Law and Analysis

### A. Applicable Law

The duty of a vessel owner to provide a seaworthy vessel is an absolute nondelegable duty; the duty imposes liability without fault.[48] A ship is seaworthy if the vessel, including her equipment and crew, is reasonably fit and safe for the purposes for which it was intended to be used.[49] Unseaworthiness may arise from a defective condition of the physical part of the ship itself, but the Supreme Court has explained that "the scope of unseaworthiness is by no means so limited."[50] "A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage might be improper."[51] Furthermore, a vessel may be unseaworthy if an unsafe method of work is used to perform vessel services.[52]

---

[46]  *Id.* at 1265.

[47]  *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[48]  *See Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 548–50 (1960) (describing the "complete divorcement of unseaworthiness liability from concepts of negligence"); *see also Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499–50 (1971) (citing *Trawler Racer*).

[49]  *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (citing *Jackson v. OMI Corp. et al*, 245 F.3d 525, 527 (5th Cir. 2001)); *see also Boudoin v. Lykes Bros. S.S. Co.*, 348 U.S. 336, 339 (1955) ("The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm but a vessel reasonably suited for her intended service.").

[50]  *Usner*, 400 U.S. at 499.

[51]  *Id.*

[52]  *Rogers v. Eagle Offshore Drilling Services, Inc.*, 764 F.2d 300, 303 (5th Cir. 1985).

In addition to showing the existence of an unseaworthy condition, a plaintiff must demonstrate that the unseaworthy condition "played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."[53]

Although the availability of punitive damages was until recently an unsettled area of law, in *McBride v. Estis Well Service, LLC*, decided October 2, 2013, the Fifth Circuit held that punitive damages are available as a remedy for the general maritime law claim of unseaworthiness.[54] Recovering punitive damages for unseaworthiness "requires a finding of willful and wanton conduct" by the shipowner in the creation or maintenance of the unseaworthy conditions.[55] A party acts willfully or wantonly if he acts in reckless or callous disregard of, or with indifference to, the rights of the plaintiff. An actor is indifferent to the rights of another, regardless of the actor's state of mind, when he proceeds in disregard of a high and excessive degree of danger that is known to him or was apparent to a reasonable person in his position.[56]

The Fifth Circuit has not had an opportunity to outline the precise scope of the availability of punitive damages for unseaworthiness claims since its very recent holding in *McBride*. However, in *McBride*, the Fifth Circuit cited *The Complaint of Merry Shipping, Inc.* with approval, suggesting that *Merry Shipping* and its progeny provide the proper framework for analyzing punitive damage

---

[53] *Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992).

[54] *McBride*, 731 F.3d at 518.

[55] *Id.* at 509, 517 (citing *The Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 626 (5th Cir. 1981)).

[56] W. Page Keeton et al., *Prosser & Keeton on the Law of Torts*, § 34, p. 213 (5th ed. 1984).

issues under general maritime law.[57] In *The Matter of P&E Boat Rentals, Inc.*,[58] decided post-*Merry Shipping*, the Fifth Circuit considered whether a principal is liable for punitive damages under general maritime law when the wanton conduct is committed by an agent.[59] There, the Fifth Circuit held that "punitive damages may not be imposed against a corporation when one or more of its employees decides on his own to engage in malicious or outrageous conduct."[60] Determining that "[i]n such a case, the corporation itself cannot be considered the wrongdoer," the Fifth Circuit explained that "[i]f the corporation has formulated policies and directed its employees properly, no purpose would be served by imposing punitive damages against it except to increase the amount of the judgment."[61]

### B. Analysis

In this case, there is a genuine dispute as to material facts regarding whether the *Augusta* was unseaworthy. In support of their motion for summary judgment, Defendants claim that "Captain Hunter's deposition testimony regarding his experience as a master of similar vessels is uncontroverted" and that "[t]he entire crew of the M/V August received regular training and drilling in safety and ship maintenance."[62] However, Plaintiff has come forward with evidence that the *Augusta's* tow was improperly lit,[63] that the crew used an unsafe method of work to change the lights

---

[57] *See McBride*, 731 F.3d at 509–10, 517–18. For a discussion of the development of the Fifth Circuit's jurisprudence regarding the availability of punitive damages in claims for unseaworthiness, see Rec. Doc. 38.

[58] 872 F.2d 642 (1989).

[59] *Id.* at 650.

[60] *Id.* at 652.

[61] *Id.*

[62] Rec. Doc. 35-2 at p. 7.

[63] *See* Rec. Doc. 41 at pp. 4–8

on the *Augusta's* tow,[64] and that the *Augusta* employed an incompetent crew which was not knowledgeable in proper lighting requirements,[65] work hour restrictions,[66] or man-overboard procedures.[67] Indeed, in their memorandum in support of its motion for summary judgment, Defendants acknowledge that, taking all inferences in a light most favorable to Plaintiff, the Court could find that Captain Hunter decided to forgo a safer method of changing the lights on the tow and that Captain Hunter failed to follow proper man-overboard procedures.[68]

Furthermore, there is a genuine dispute as to material facts regarding whether there was willful and wanton conduct by the shipowner, in this case, Caillou Island Towing Co., Inc., in the creation or maintenance of the unseaworthy conditions aboard the *Augusta*. Plaintiff points to deposition testimony from Defendant Caillou Island's 30(b)(6) witnesses suggesting that Caillou Island did not ensure that Captain Hunter received adequate training on federal regulations and company policies, including those relating to lighting, inland navigation, and man-overboard situations.[69] For example, Plaintiff cites to the testimony of Defendants 30(b)(6) witness Brooks Kenneth Luke, in which Mr. Luke testified that company policy did not require annual training on the proper lighting of vessels.[70] Although Defendants contend *P&E Boat Rentals* held that punitive damages "may not be imposed against a corporation when one or more of its employees decides on

---

[64] *See id.* at pp.8–14.

[65] *See id.* at pp.14–16.

[66] *See id.* at p. 16.

[67] *See id.* at pp. 16–17.

[68] Rec. Doc. 35-2 at p. 3.

[69] *See* Rec. Doc. 41 at pp.17–20, 22.

[70] *See* Rec. Doc. 56 at p. 3 (citing Rec. Doc. 41-12, Deposition of Caillou Island Towing Co., Inc., through its designated representative Brooks Kenneth Luke, dated Sept. 25, 2013, at p. 6).

his own to engage in malicious or outrageous conduct,"[71] here, there is a genuine dispute as to material facts regarding whether Caillou Island properly trained its employees, formulated the appropriate policies, and enforced those policies, or whether it engaged it callous or reckless disregard to the creation of unseaworthy conditions.

## V. Conclusion

In this case, there is a genuine dispute of material facts relating to whether the *Augusta* was unseaworthy, whether the creation of an unseaworthy condition was the result of willful and wanton conduct, and whether the willful and wanton conduct is properly attributable to Defendants. At this juncture, the Court must "refrain[] from making credibility determinations or weighing the evidence" in order to resolve these issues. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this  13th  day of November, 2013.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[71] *P&E Boat Rentals*, 872 F.2d at 652.

12