**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TRACY AINSWORTH, *as parent and natural Tutrix on behalf of the minor child Veronika Bumgarner, Individually and as Personal Representative of the Estate of Vernon Bumgarner, Deceased*** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-0688** |
| **CAILLOU ISLAND TOWING COMPANY, INC., et al.** | **SECTION: "G"(2)** |

**ORDER AND REASONS**

Before the Court is Caillou Island Towing Company, Inc.'s, Monteiro Fleet, Inc.'s, and Monteiro Marine Services, Inc.'s (collectively, "Defendants") "Motion *in Limine* to Exclude Plaintiff's Psychological Expert Beverly Howze, Ph.D., and Psychiatric Expert Harvey Rosenstock, M.D."[1] After considering the pending motion, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will deny the pending motion.

**I. Background**

***A. Factual Background***

Tracy Aisnworth ("Plaintiff") is the parent and natural tutrix of VB, and the personal representative of the estate of Vernon Bumgarner ("Decedent").[2] VB is the surviving daughter of Decedent.[3] Plaintiff claims that at all relevant times, Defendants owned, operated, and/or crewed the

---

[1] Rec. Doc. 34.

[2] Rec. Doc. 40 at ¶ 1.

[3] *Id.* at ¶ 2.

*Augusta*, a vessel involved in the incident that is the basis of this suit.[4] Decedent was employed by Defendants as a member of the crew of the *Augusta*.[5]

On or about January 16, 2013, Decedent and other members of the crew were attempting to change the lights on a barge being towed by the *Augusta*.[6] After Decedent transferred from the *Augusta* to the barge, the captain of the *Augusta* allegedly failed to maintain the vessel's position, eventually causing the towline to jerk the barge.[7] The jerking of the barge "caus[ed] Decedent to fall from the barge into the Mississippi River."[8] Decedent subsequently drowned, not to be found until March 12, 2013.[9]

***B. Procedural Background***

On April 10, 2013, Plaintiff filed a complaint alleging that (1) Decedent's injuries and death were caused by the negligence of Defendants, pursuant to the Jones Act,[10] and (2) Decedent's injuries and death were caused by the Defendants' breach of their duty to furnish a seaworthy vessel,

---

[4] *Id.* at ¶ 9.

[5] *Id.* at ¶ 10.

[6] *Id.* at ¶ 11.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] Rec. Doc. 2 at ¶ 13.

pursuant to general maritime law.[11] Plaintiff sought loss-of-society damages and lost-future-income damages.[12] Her prayer for relief also included a request for punitive damages.[13]

On May 21, 2013, Defendants filed a Rule 12(c) Motion for Partial Judgment on the Pleadings, asserting that Plaintiff was not entitled to loss-of-society damages, lost-future-income damages, or punitive damages.[14] On June 24, 2013, the Court granted Defendants' Rule 12(c) Motion.[15] In its Order and Reasons, the Court explained that although neither the Supreme Court nor the Fifth Circuit had directly addressed the issue, other district courts within this Circuit had interpreted *Miles v. Apex Marine Corp.*[16] and *Atlantic Sounding Co., Inc. v. Townsend*[17] as precluding punitive damages. Thus, the Court found at that time that: "A Jones Act seaman is not entitled to punitive damages. Therefore, the Jones Act seaman's survivors may not receive punitive damages once they inherit the seaman's survival action for the injuries the decedent suffered, whether they sue under the Jones Act or general maritime law."[18] The Court also ruled that Plaintiff could not recover loss-of-society damages,[19] or lost-future-income damages.[20] Following the Court's

---

[11] Rec. Doc. 2 at ¶ 14.

[12] *Id.* at ¶ 15.

[13] *Id.* at ¶ 17.

[14] Rec. Doc. 9 at p. 1

[15] Rec. Doc. 17.

[16] *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).

[17] *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009).

[18] *Id.* at p. 12.

[19] *Id.* at p. 10.

[20] *Id.* at p. 11.

Order, Plaintiff filed an amended complaint, removing the request for punitive damages, on July 23, 2013.[21]

On October 4, 2013, Plaintiff filed an "Unopposed Motion for Reconsideration of Defendants' Rule 12(c) Motion for Partial Judgment on the Pleadings,"[22] wherein she moved the Court to reconsider and vacate its Order dismissing Plaintiff's claim for punitive damages. In support of her motion, Plaintiff cited the Fifth Circuit's decision *McBride v. Estis Well Service, L.L.C*,[23] entered October 2, 2013. In *McBride*, the Fifth Circuit revisited its jurisprudence surrounding punitive damage awards under general maritime law, and held that "punitive damages remain available to seamen as a remedy for the general maritime law claim of unseaworthiness."[24] Because of this intervening change in the controlling law, on October 21, 2013, the Court granted Plaintiff's motion for reconsideration, and gave Plaintiff leave to file an amended complaint.[25] On October 21, 2013, Plaintiff's second amended complaint was entered, reasserting Plaintiff's claim for punitive damages.[26]

On October 8, 2013, Defendants filed a "Motion for Partial Summary Judgment to Dismiss Plaintiff's Claims for Punitive Damages,"[27] which the Court denied on November 14, 2013.[28]

---

[21] Rec. Doc. 23.

[22] Rec. Doc. 33.

[23] 731 F.3d 505.

[24] *Id.* at 518.

[25] Rec. Doc. 38.

[26] Rec. Doc. 39.

[27] Rec. Doc. 35.

[28] Rec. Doc. 60.

Also on October 8, 2013, Defendants filed the pending "Motion *in Limine* to Exclude Plaintiff's Psychological Expert Beverly Howze, Ph.D., and Psychiatric Expert Harvey Rosenstock, M.D."[29] Plaintiffs filed an opposition on October 29, 2013.[30] With leave of the Court, Defendants filed a reply on November 4, 2013,[31] and Plaintiff filed a surreply on November 5, 2013.[32]

## II. Parties' Arguments

### *A. Defendants' Argument in Support*

In support of its motion, Defendants argue that"Dr. Howze's and Dr. Rosenstock's records and potential testimony are of no consequence in determining any issue in this case, and are not relevant under Federal Rules of Evidence 401 and 403."[33]According to Defendants, "[m]edical records produced through discovery indicate that minor child V.B. initially treated with Dr. Rosenstock, then was transferred to Dr. Howze's office for psychological injuries directly resultant from her father's death."[34] Defendants aver that "[t]he only conceivable purpose for calling these experts or admitting their records at trial is to present inadmissible evidence concerning loss of society and other non-pecuniary damages the Court has already held to be non-recoverable."[35] Thus,

---

29 Rec. Doc. 34.

30 Rec. Doc. 42.

31 Rec. Doc. 49.

32 Rec. Doc. 58.

33 Rec. Doc. 34-1 at p.1.

34 *Id.*

35 *Id.* at p. 2.

Defendants contend that "Dr. Howze and Dr. Rosenstock cannot testify about any relevant subject matter."[36]

***B. Plaintiff's Argument in Opposition***

In opposition to the motion, Plaintiff asserts that the testimony of Dr. Howze and Dr. Rosenstock "will bear on the minor's claim for the damages for loss of parental nurture and guidance that she would have received from [Decedant] until she reached the age of majority."[37] Citing caselaw from the Fifth Circuit and other sections of this Court, Plaintiff maintains that loss of parental nurture is recoverable as type of pecuniary damage.[38] According to Plaintiff, [t]he loss by a child of parental guidance and nurture is a separate item of damage from the loss of a parent's society and companionship, which is not a recoverable item of damage under the pecuniary loss test of DOHSA [Death on the High Seas Act]."[39] Plaintiff contends that Dr. Howze's and Dr. Rosenstock's respective testimony is relevant to VB's loss of parental nature:

> Said mental health professionals have examined and interviewed the minor and are qualified to discuss the parental nurture that VB received from [Decedent] prior to his death. Should Plaintiff elect not to put the minor through the stress of testifying at a trial of this lawsuit, her mental health professionals should be permitted to testify to the limited issue of Plaintiff's loss of nurture of her father.[40]

---

[36] *Id.* at p. 3.

[37] Rec. Doc. 42 at p. 2.

[38] *See id.* (citing *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 141 (5th Cir. 1986); *Beech v. Hercules Drilling Co., LLC*, 786 F. Supp. 2d 1140, 1150 (E.D. La. 2011)).

[39] *Id.*

[40] *Id.* at p. 3.

***C. Defendants' Reply***

In their reply to Plaintiff, Defendants admit that "[d]amages for loss of parental nurture and guidance have been deemed pecuniary."[41] However, Defendants assert that "expert testimony is not needed to determine their availability or amount, if any, in this case."[42] According to Defendants,

> In order to recover damages for loss of parental nurture and guidance the Plaintiff must present evidence that Vernon Bumgarner was fit to furnish such training and that training and guidance had actually been rendered by the parent during his or her lifetime to the child. Plaintiff's mental health experts have only limited knowledge of Vernon Bumgarner's fitness to provide parental nurture and guidance, and whether such guidance was actually rendered during his lifetime.[43]

***D. Plaintiff's Surreply***

Plaintiff maintains that although the witnesses in question never had any direct interaction with Decedent, "they have had interaction with the minor, and can certainly grasp from that interaction the role that Vernon Bumgarner played in the nurturing of his daughter."[44] According to Plaintiff, "Defendants' complaints go more to the weight to be given their testimony, rather than their qualification for offering this testimony."[45]

## III. Law and Analysis

Federal Rule of Evidence 401 provides that evidence is relevant if (a) "it has any tendency to make a fact more or less probable than it would be without the evidence," and (b) "the fact is of

---

[41] Rec. Doc. 49 at p. 2.

[42] *Id.*

[43] *Id.*

[44] Rec. Doc. 58 at p.1.

[45] *Id.* at p. 2.

consequence in determining the action."[46] Pursuant to Rule 402,"relevant evidence is admissible" unless the Constitution, federal statute, the Rules of Evidence, or another rule prescribed by the Supreme Court provides otherwise.[47] In turn, Federal Rule of Evidence 403 serves as one exception to the admissibility of relevant evidence, providing that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[48] When applying Rule 403, "a district court 'has broad discretion to weigh the relevance, probative value, and prejudice of the evidence in determining its admissibility . . . .'"[49]

According to Plaintiff, the testimony in question is relevant to the amount of damages VB is entitled to for loss of nurture. As the Fifth Circuit explained in *Solomon v. Warren*,[50] "[w]ithout serious dispute, children may suffer a pecuniary deprivation, apart for the loss of support and financial contributions, from the death of their parents in the loss of parental guidance and training, commonly identified as loss of nurture."[51] While the Fifth Circuit has recognized that "this item of damages cannot be computed with any degree of mathematical certainty," it has nonetheless allowed children to recover for the loss of "the nurture, instruction, and physical, intellectual, and moral training they would have received from their parents, but for the parent's wrongful death."[52] "The

[46] Fed. R. Evid. 401.

[47] Fed. R. Evid. 402.

[48] Fed. R. Evid. 403.

[49] *French v. Allstate Idem. Co.*, 637 F.3d 571, 578 (5th Cir. 2011) (quoting *United States v. Allard*, 464 F.3d 529, 534 (5th Cir. 2006)).

[50] 540 F.2d 777 (1976).

[51] *Id.* at 788.

[52] *Id.*

wrongful death of a parent standing alone is an insufficient predicate to support recovery by a child of the loss of parental nurture, and in order to recover this item of damages the evidence must show that the deceased parent was fit to furnish such training and that training and guidance had actually been rendered by the parent during his or her lifetime to their children."[53] Although the Fifth Circuit has not delineated a definitive list of factors bearing on loss of nurture, the Second Circuit has instructed that the finder of fact should consider "the age, character, earning capacity, health, intelligence, and life expectancy of the decedent, as well as the degree of dependency of the distributees upon the decedent and the probable benefits they would have received but for the untimely death."[54]

In this case, Plaintiff has demonstrated the limited nature of the testimony and its relevance. The experts' testimony goes toward establishing the guidance and training that the minor child would have received from Decedent but-for his death, which is a recoverable category of damages. As Plaintiff has averred, the experts have been involved in the psychological treatment of the minor child and "can certainly grasp from that interaction the role that Vernon Bumgarner played in the nurturing of his daughter."[55]

Furthermore, there is no indication that the testimony's probative value would be "substantially outweighed" by a danger of unfair prejudice or confusing the issues. Defendants can cross-examine the witnesses, and the complaints Defendants raise—including the fact that the witnesses never interacted directly with Decedent—will go toward the weight of their testimony.

---

[53] *Id.*

[54] *McKee v. Colt Electronics Co., Inc.*, 849 F.2d 46, 52 (2d Cir. 1988).

[55] Rec. Doc. 58 at p. 1.

## V. Conclusion

Plaintiff has demonstrated that the proposed testimony is relevant to the minor child's recovery for loss of nurture. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 25th day of November, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**